The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States and this honorable court. Good morning ladies and gentlemen. This is Judge Easterbrook. Judge Scudder and I are in the courtroom in Chicago and Judge Ripple is participating by phone from South Bend. All of the lawyers are participating remotely by phone. That means that because phone connections are imperfect and sometimes sound in one direction makes it hard to hear sound in another, that too many people may speak at once. I will try to find circumstances where that's happening and ask everybody to be quiet until we can sort out what's going on. This generally works well. It just takes a bit of patience on behalf of everybody participating. I will also attempt to let counsel know when the time for their rebuttal has arrived and when their time is about to expire. So let us proceed. The first case for argument this morning is Bowman v. Korte. Ms. Siegel. Yes. Thank you, Your Honor. May I begin? Yes, please. Good morning. May it please the court, Rachel Siegel on behalf of plaintiff's appellant Carlos Bowman. The district court stated rationale for granting summary judgment was that Mr. Bowman failed to follow up on the second grievance he filed, which further detailed the dehumanizing treatment he had incurred, that even defendants concede this ruling was error. Without conceding anything, I'd like to highlight for the court the simplest, most logical and correct path to resolution of this appeal, which is this. My client, Mr. Bowman, put forth evidence that he filed a second grievance, which unquestionably exhausted all his claims. The one and only answer defendants have to that is that the evidence he put forth was somehow not competent evidence that could be considered a summary judgment merely because he didn't swear to his declaration. Defendants are simply wrong. The evidence Mr. Bowman put forth, which he has sworn to in the record, was clearly admissible and obviously sufficient to create the dispute of fact to defeat summary judgment. For this simple reason, this court should reverse. In response to this argument, the government has put all their eggs in one basket. Ms. Siegel? Ms. Siegel? This is Judge Easterbrook. Do I understand correctly by that formulation that you concede that there is a material dispute of fact that requires a payee hearing? I'm asking this in particular about the April 30th grievance because I wonder whether there is any evidence in the record to refute your client's statement that such a grievance was filed. Yes, Your Honor, I don't concede that a payee hearing is necessary. Instead, I would argue that defendants put no evidence in the record whatsoever about the existence or, as they would have it, non-existence of the second grievance and that there's plenty of information in the record for this court to decide the issue on and further that my I also believe a payee hearing is inappropriate because there is no excusable neglect or good cause here such that the issue of exhaustion should never have been raised in the first place. Although defendants ask for remand and a reopening of discovery on exhaustion or a payee hearing, this court should reverse and remand for trial. This is so because, as I said, the issue of exhaustion should never have come up below. Defendants asserted non-exhaustion in their answer, denying any argument that defendants didn't realize non-exhaustion might be worth pursuing until much later on. They completely ignored the court's scheduling order for the filing of dispositive motions based on exhaustion. Instead, they sought summary judgment on the merits. But scheduling orders mean something, and the affirmative defense of exhaustion can be waived. That a new line attorney entered the case and questioned the tactical choices of her predecessor does not excuse the violation of a court's scheduling order. The district court's ruling permits or really incentivizes parties who've received unfavorable decisions to change counsel in order to receive a mulligan. That is a perverse incentive. Ms. Siegel, it's Judge Scudder. Is the plaintiff's theory of an Eighth Amendment violation as to the remaining three defendants rooted in an allegation of a failure to intervene? Yes, Your Honor. Indeed, it is. But I'd like to remind you that the district court has already held that there's a triable issue of fact as to whether the defendants failed to intervene and thus violated my client's Eighth Amendment rights. I thought we're here on a failure to exhaust. We are here because after we're in an interesting situation because although as this court prescribed in Pavey and as the district court's scheduling order said below that exhaustion should come before a decision on the merit, that's not what happened below. So my client defeated summary judgment on the merit. And then two years- Yeah, okay. You're referring to the first summary judgment motion. If that's right, that the Eighth Amendment claim is rooted in a failure to intervene, how does the April 20th or for that matter the April 30th grievance put the jail on notice of that theory of liability, the defendants on notice? Yes. So firstly, there's no dispute that the April 30th grievance put the jail and even defendants themselves on notice of their failure to intervene because it corrected any alleged defects in the first grievance by specifically naming all three defendants and pleading that they had condoned the cruel and unusual treatment that my client was subjected to during the tactical shakedown. But I also believe that the first grievance exhausted. So I'd like to emphasize that this court need not reach the issue of the first grievance at all because as long as the second grievance exhausted, it is immaterial really whether the first alone did. But I believe the first grievance did exhaust. This case is on all fours with Madoff beloved in which the court held the plaintiff's failure to name defendants in his grievance with a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirements. All defendants were contacted here as part of or actively involved in investigating the grievance and they all denied my client's allegations that the march had been conducted in a sadistic manner and he was attacked during it. So it's unclear what would have been different had the defendants been named and had Mr. Bowman grieved their failure to intervene. I'm not focusing so much on the you're you're emphasizing the failure or the not the failure you're you're emphasizing the lack of the specific identification of correctional officers in the April 20th grievance. But the April 20th grievance to my eye doesn't talk about failure to intervene. It looks like what Mr. Bowman is trying to hold those that he sued responsible for is for the physical attack itself. It doesn't it doesn't to my eye suggest that well you know and there were guards that stood around and they that was unacceptable. They needed to intervene to protect me. There's nothing like that in that grievance. I believe there are several statements in the grievance that get to the fact that this was a failure to intervene on behalf of supervisors. There are statements in the grievance describing the shakedown as quote tactical operational shakedown. My client mentioned institutional policy. He claims that the facility was quote placed on administrative lockdown and that there was an unofficial open season declared on the inmate populace. And he also mentioned that several officers were snickering and laughing when he tripped over another inmate's foot. So I believe that all of those get at the issue of failure to intervene. But regardless, the standard for a grievance is that it need not plead any specific legal theory at all. In fact, this court has emphasized even that it has a strong commitment to the idea that a plaintiff need not plead legal theories in a complaint. So certainly a grievance shouldn't be held to a higher standard than that. Counsel, Judge Easterbrook again. What has to be in a complaint is a matter of federal rules. What has to be in a grievance is a matter of the prison's requirement. Does the prison say one way or the other whether a theory of the wrong has to be in a grievance? I would agree with you that normally prison regulations do govern, but that's only when prisoners have been made aware of those regulations and as in Maddox v. Love, the grievance form. No, I'm sorry, counsel. I'm not asking whether the prisoners were aware of the regulations. I'm asking what was in the regulations.  And does that speak to the issue that Judge Scudder has raised? I don't believe it does speak to the issue that Judge Scudder has raised. I believe that the regulations required that Mr. Bowman provide all the detail about individuals involved that he could, but that rule is overridden by the fact that grievance form itself asked only for a brief summary of grievance. Okay, I, alas, failed to notify you when you got to your rebuttal time. You were in fact a minute and a half over your allotted 10 minutes, but we've asked you more than a few questions, so I will give you one minute for rebuttal. Thank you. Mr. Dozman. Hey, please, the court. I am Assistant Attorney General Aaron Dozman. I represent the defendants. This court should affirm the entry of summary judgment for the defendants. First, Bowman did not exhaust any claims against the defendants. Second, the district court did not abuse its discretion by allowing the late motion for summary judgment on exhaustion. And third, the district court also did not abuse its discretion when it declined to recruit counsel on summary judgment proceedings. The only grievance in the record, after the close of discovery, was Bowman's April 20th, 2014, grievance. And under department regulations— Town Council, that is the only grievance for which we have a paper copy. But the plaintiff asserts that another grievance was filed on April 30, naming everyone and complying with all the prison's rules, that the prison just ignored it. Now, is there any contrary evidence in the record? There, there is not. There is no contrary evidence disputing that, that would create a disputed issue of fact necessary for a PAVI hearing. Our argument hinges on the form of— Well, if there is, counsel, if there's no contrary evidence, why doesn't that end any dispute about exhaustion? I could imagine an affidavit saying, we have searched our records, there is no such grievance in the records, and we infer that there is no such grievance, that none was filed. But I gather there's no such affidavit. If there is no such affidavit, all the evidence is that there was such a grievance, and the prison ignored it. What follows from that? I disagree that there was evidence of an April 30th grievance. Well, that's what the plaintiff says. Yes. And what plaintiffs say is evidence. Well, it is evidence on summary judgment if it complies with Rule 56. And Rule 56 says that if you are going to put up testimonial evidence on summary judgment, it needs to be either in an affidavit form or unsworn declaration that complies with 28 U.S.C. Section 1746. And the grievance here did not comply with that form. And so it should not have been considered evidence on summary judgment. And because on summary judgment, the district court needs some indicia of reliability with evidence. And there have to be consequences for testimonial evidence. So there's also some problems created, not just in the form of that grievance or the response, but the grievance copy that was attached to the summary judgment response was misdated with a 2018 date. And then when Mr. Bowman tried to correct the grievance in a post-judgment motion or correct his response, it contained several more inconsistencies with his sworn statements earlier in the litigation. And I don't think I've seen an actual response to those inconsistencies raised in the reply. And that's that he, for the first time, claims that his attachment was a recreation. He said that he didn't know the names of the defendants at the time of search, but in prior deposition testimony, he had identified who those defendants were and that they were present. And he submits another recreated copy of the grievance, which then mentions an entirely different grievance. And he knew how to grieve the actions of unknown prison officials because that's exactly what he did in the April 20th grievance. He said they were unknown officers. And that is- Mr. Dozman, it's Judge Scudder. Going back to Judge Easterbrook's question, is there any doubt that you had the opportunity or your client had the opportunity at summary judgment to put in an affidavit or a declaration saying, we've never received a grievance dated April 30th. We've never seen a document that in any way, shape or form resembles the one that the plaintiff has brought forward. Is there anything that prevented you from doing that? No, I suppose we had the opportunity in a reply to summary judgment. In other words, if your theory is we've never seen this, we have concerns about its integrity and authenticity. Your client is in the best position of all the parties here to say, look, we've checked our records. We've asked around. We have no record whatsoever of an April 30th grievance. None. What's zero. And you didn't do that. Let me ask you a question on a slightly different line, because I think the record is pretty clear that there's no affidavit or declaration from you or from your client on the exhaustion point. Is the requirement under federal rule of civil procedure 6B1B with respect to extensions of time required to be complied with in your view, or is it optional? Under the excusable neglect standard, Jonah? No, my question is more basic. When a party seeks an extension of time or a leave to file a second summary judgment motion, does the district court need to make the finding required by rule 6B1B, or is that finding optional? I think that the finding is, um, I suppose it depends on the specific. I don't know. I'm just asking you, just, you know, the rule, you know, the rule, you've read the rule in preparation for the argument. Do the rules contemplate that that specific requirement be complied with, or do the rules make it optional? I don't see a specific requirement that a district judge shall make in particular the finding, but it, and usually when those decisions are reviewed by the Court of Appeals, the court, the judge has an order, and then the particular facts of the case judge whether that was an abuse of discretion. The reason that I'm asking you the question that way is because I actually think that that may be the only way that you can defend what happened. In other words, there's no, there's nothing in the record where showing that the district court made a finding of excusable neglect. We can, there's no question that the record explains why your client wanted to file a second summary judgment motion, but explaining why you wanted to do that is different than a finding of excusable neglect. And so, if the requirement in Rule 6b-1b is just that, a requirement, I, I'm not so sure how you can prevail. But if it's optional, you may have an argument. Yes, and the rules allow, the reason that the defendants moved late was because of a oversight mistake, and they fessed up to that. And the district court has discretion to accept that excuse, which she did find. She found that it was a, it was an oversight by counsel, that that was the reason why she was allowing the late motion. And district courts have wide discretion in those decisions, particularly when there's no significant harm to the other side in moving that deadline. And so far, Bowman has not identified actual prejudice by having to face the exhaustion issue on the merits. He didn't get a trial. He was ready to go, the trial was ready to begin. Well, Mr. Dozman, you have one minute to go. Thank you. So, not getting a trial is, is not prejudice in that he was harmed from gathering information for his case or building his case the way he wanted to. He had to address the exhaustion defense on the merits. And, and that's an affirmative defense. And it's designed to be addressed before trial. So, not reaching trial is not actual prejudice. He just had to confront the merits before he could then go on to trial. I have a few seconds left, but if the court has no further questions, we ask that this court affirm the judgment of the district court. Thank you. Mm-hmm. Thank you very much. Ms. Siegel, you have your one minute for rebuttal. Thank you. I'd like to reemphasize the support I've noted that there is evidence of the second grievance in the record, and my client has sworn to it. Since there's no contrary evidence, that should end the dispute on exhaustion. And if you judge... Excuse me. Ms. Siegel, I understood Mr. Dozman to say that your client had not sworn to the April 30 grievance, either by affidavit or an attested declaration. And you say he has. How, when and how did he do that? He filed what he called an amended motion in opposition to summary judgment, and that's at pages, I believe it's 285 to 287. In the special appendix, where he has sworn under oath to the second grievance. And further, the issue that Judge Scudder raised regarding whether the second grievance exhausted substantively as the failure to intervene was not litigated below, and that means that Mr. Bowman had no opportunity to respond to that issue. If that's the way the court is leaning, I believe you should remand. Thank you. Thank you very much. Ms. Siegel, the court appreciates your willingness to be recruited as counsel in this case, and your assistance to the court as well as your client. Thank you. The case is taken under advisement and we'll hear argument.